IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER BROOKS,<br><br>    Plaintiff,<br><br>  v.<br><br>SAN FRANCISCO POLICE DEPARTMENT SERGEANT HAGGETT,<br><br>    Defendant. | No. C 07-2615 SBA (PR)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM, AND ADDRESSING PENDING MOTIONS**<br><br>(Docket nos. 29, 42, 46, 48, 53) |

## INTRODUCTION

Plaintiff Walter Brooks filed the instant pro se civil rights action under 42 U.S.C. § 1983 against San Francisco Police Chief Heather Fong and Sergeant John Haggett stemming from the use of excessive force against Plaintiff during his post-arrest pre-arraignment detention. Plaintiff was incarcerated at San Quentin State Prison at the time of filing the complaint, but he was released from prison on October 7, 2008. (Oct. 2, 2008 Notice of Address Change at 1.)

Before the Court are Plaintiff's motion for reconsideration of the Court's dismissal of the supervisory liability claim against Defendant Fong, his motion for appointment of counsel, his motion for leave to conduct discovery, and his motion for telephonic or video communications with the Court, as well as Defendant Haggett's motion for summary judgment. For the reasons outlined below, the Court DENIES Defendant Haggett's motion for summary judgment and Plaintiff's motions for reconsideration and for appointment of counsel. The Court GRANTS Plaintiff leave to conduct discovery and DENIES as moot his motion for telephonic or video communications with the Court.

## PROCEDURAL BACKGROUND

On July 5, 2007, Plaintiff filed an amended complaint alleging: (1) the use of excessive force by Defendant Haggett against Plaintiff on March 3, 2007 "violated [his] rights and constituted cruel and unusual punishment under the Eighth Amendment;" (2) verbal harassment by Defendant Haggett on March 3, 2007 resulted in an inmate's use of force against Plaintiff on June 8, 2007 and

"violated [his] rights and constituted cruel and unusual punishment under the Eighth Amendment;" and (3) supervisory liability against Defendant Fong.  (Am. Compl. at 3-6.)

In an Order dated March 4, 2008, the Court found that Plaintiff alleged a cognizable excessive force claim against Defendant Haggett.  (Mar. 4, 2008 Order at 2-3.)  The supervisory liability claim against Defendant Fong was dismissed because Plaintiff failed to allege facts sufficient to state a cognizable claim for relief.  (Id. at 3.)  The verbal harassment claim was also dismissed for failure to state a cognizable claim for relief.  (Id.)

On March 11, 2008, Plaintiff filed a motion for reconsideration of the Court's dismissal of the supervisory liability claim against Defendant Fong.

Defendant Haggett filed an answer on May 6, 2008, in which he denied using excessive force against Plaintiff.

On August 1, 2008, Defendant Haggett filed a motion to dismiss for failure to exhaust administrative remedies, and in the alternative, a motion for summary judgment.  Plaintiff filed an opposition to Defendant Haggett's motion on September 11, 2008.  Defendant Haggett filed a reply on September 29, 2008.  In his reply, Defendant Haggett withdraws his motion to dismiss because he concedes that Plaintiff properly exhausted his administrative remedies. (Reply at 1 (citing Opp'n, Ex. G).)  Therefore, the Court need not rule on the motion to dismiss given that Defendant Haggett has withdrawn it.

Defendant Haggett moves for summary judgment on the ground that Plaintiff does not have a cause of action under the Eighth Amendment.  Defendant Haggett argues that summary judgment should be granted because Plaintiff incorrectly cited the Eighth Amendment as the applicable constitutional standard for his excessive force claim.  (Mot. for Summ. J. at 7.)  Defendant Haggett argues that Plaintiff does not have a cause of action under the Eighth Amendment given his post-arrest pre-arraignment detention status at the time of the alleged incident.  (Id.)  This argument is unavailing because the Court has liberally construed Plaintiff's allegations and placed Defendant Haggett on notice that a different constitutional standard may be an appropriate basis for the

excessive force claim given Plaintiff's status as a detainee.[1] (Mar. 4, 2008 Order at 2-3.) In the alternative, Defendant Haggett argues that no constitutional violation occurred and thus he is entitled to judgment as a matter of law. (Mot. for Summ. J. at 8.)

## DISCUSSION

### I.   Motion for Summary Judgment

#### A.   Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over

---

[1] In its March 4, 2008 Order of Service, the Court found that Plaintiff stated a cognizable excessive force claim under the Fourteenth Amendment, given his status as a pretrial detainee. (Mar. 4, 2008 Order at 2-3.) Defendant Haggett concedes that the Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment. (Reply at 2 n.1.) The Court has since determined that Plaintiff was a post-arrest, pre-arraignment detainee at the time of the incident; therefore, Defendant Haggett's alleged use of force is governed by the Fourth Amendment. See Pierce v. Multnomah County, Or., 76 F.3d 1032, 1043 (9th Cir. 1996).

3

material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

The district court's function on summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence and the inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. See id. at 631. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. See id. (Where nonmoving party's direct evidence raises genuine issues of fact but conflicts with other unsworn testimony, court may not grant summary judgment to moving party on ground that direct evidence is unbelievable.). The district court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. Wall v. County of Orange, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury."). But "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776-77 (2007) (police officer entitled to summary judgment based on qualified immunity, in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders).

**B.     Evidence Considered**

A district court may only consider admissible evidence in ruling on a motion for summary

4

judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002). Unauthenticated documents and hearsay evidence are inadmissible, and consequently, may not be considered on summary judgment. Orr, 285 F.3d at 773-74, 778.

In support of his motion for summary judgment, Defendant Haggett submits his declaration (docket no. 51) and declarations by San Francisco Police Officers Kevin Lee (docket no. 49) and Glenn Sherry (docket no. 50). A declaration by his attorney (docket no. 52), Megan Higgins, has also been submitted; however, it is irrelevant as it solely addresses the motion to dismiss for failure to exhaust administrative remedies, which has been withdrawn.

In support of his reply, Defendant Haggett submits another declaration by Attorney Higgins (docket no. 59). Attached to this declaration are the following: a copy of Plaintiff's medical records from Jail Health Services,[2] and a copy of a booking photograph of Plaintiff taken on March 3, 2007, the date of the incident. (Higgins Decl., Exs. A, B.) Attorney Higgins states that the exhibits are accurate copies of what they purport to be. (Higgins Decl. ¶¶ 2-3.) However, Plaintiff's booking photograph and medical records are inadmissible evidence because they have not been properly authenticated pursuant to Federal Rule of Evidence 803(6). Attorney Higgins' declaration is inadequate to authenticate these documents and is insufficient to overcome the hearsay objections to these documents. Defendant Haggett would need to submit a declaration by the photographer who took the booking photograph or by an individual who saw the photographer take the booking photograph to establish a hearsay exception. Similarly, Defendant Haggett would need to submit a declaration from the custodian of records for Jail Health Services, where Plaintiff was examined and later booked, to establish a hearsay exception for Plaintiff's medical records. Because neither the booking photograph nor the medical records have been properly authenticated, they are inadmissible; therefore, the Court will not consider them in connection with Defendant Haggett's motion for summary judgment.

Plaintiff verified his amended complaint and his opposition by signing them under penalty of perjury. In support of his opposition, Plaintiff submits his declaration and a declaration by a fellow

---

[2] In an Order dated February 23, 2009, the Court granted Defendant Haggett's motion to file Plaintiff's medical records under seal. (Feb. 23, 2009 Order at 1.)

5

inmate, Vadim Marmer (docket no. 80). Plaintiff verified his declaration by signing it under penalty of perjury. Inmate Marmer's declaration was based on his personal knowledge of the incident between Plaintiff and Defendant Haggett and was signed by him under penalty of perjury; therefore, it will be considered by the Court. See Fed. R. Civ. P. 56(e). The Court will treat Plaintiff's verified complaint, his verified opposition, his declaration, and Inmate Marmer's declaration as affidavits in support of his opposition under Rule 56 of the Federal Rules of Civil Procedure.

### C. Factual Background

On March 3, 2007, Plaintiff was arrested by San Francisco Police Officers Kevin Lee and Glenn Sherry in relation to a report of an auto burglary. (Sherry Decl. ¶ 2; Opp'n at 5.) He was transported to the San Francisco Police Department Southern Station where he was placed in a holding cell. (Lee Decl. ¶ 3; Opp'n at 5.) When Officer Sherry asked Plaintiff what was his name, Plaintiff gave a false name. (Sherry Decl. ¶ 3; Opp'n at 5.) The two officers spent forty-five minutes to an hour attempting to identify Plaintiff. (Sherry Decl. ¶ 3.) Defendant Haggett arrived at the station at that time, bringing with him the four individuals he had arrested "who were involved in a chase with [him] and who shot at [him]." (Haggett Decl. ¶¶ 2-3.) While processing his arrestees, Defendant Haggett became aware of the officers' difficulty in identifying Plaintiff. Defendant Haggett instructed Officer Lee to identify Plaintiff using the Personal Identification Device (PID). This inkless fingerprint identification device scans the San Francisco Police Department's database of fingerprints to determine whether an arrrestee's fingerprint matches with a fingerprint stored in the database. (Haggett Decl. ¶¶ 4-5; Opp'n at 5.) Because Officers Lee and Sherry did not know how to use the PID machine, Defendant Haggett took over and operated the machine to identify Plaintiff. (Haggett Decl. ¶¶ 6-8; Opp'n at 5.) Plaintiff's and Defendant Haggett's version of the facts differ from this point onward.

#### 1. Plaintiff's Version

Plaintiff alleges that, "after [he] had been apprehended, charged and identified at the PID computer," Defendant Haggett asked him whether he was a parolee at large. (Pl.'s Decl. ¶ 2.) "[Plaintiff] remained still and silent and Defendant John Haggett bent [Plaintiff's] right index finger in a[n] unusual position causing extreme pain in an attempt to get [Plaintiff] to answer his question."

6

(Id. ¶ 3.) Defendant Haggett then asked Officer Lee, "Are we cuffing this guy or what?" (Id. ¶ 4.) Officer Lee then handcuffed Plaintiff, returned him to the holding cell, and placed him next to another arrestee, "a (Hispanic man) who was in jail for allegedly shooting at Sergeant John Haggett." (Id. ¶ 5.) Two or three minutes later, Defendant Haggett walked up to Plaintiff in the holding cell and stepped on his right foot. (Id. ¶ 6.) Defendant Haggett then asked Plaintiff again whether he was a parolee at large. (Id. ¶ 7.) When Plaintiff refused to answer, Defendant Haggett "used a closed fist and struck [Plaintiff] in the head on [his] right side." (Id. ¶ 7.) Defendant Haggett asked the same question one more time, and when Plaintiff still refused to answer, Defendant Haggett, "using a closed fist, socked [Plaintiff] high on [the] right side of [his] forehead." (Id. ¶ 8.) Defendant Haggett then asked Plaintiff where he lived, and when he did not answer, "Defendant Haggett punched [him] in the nose using a closed fist." (Id. ¶ 9.) Plaintiff then screamed in pain and told Defendant Haggett that he was homeless. (Id.) Defendant Haggett then stated, "Now, that was not hard, was it[?]" (Id. ¶ 10.) As Defendant Haggett was leaving the holding cell, he addressed Plaintiff by stating, "You're a child molester, the lowest of the low," and he told the Hispanic arrestee, "[Plaintiff is] a child molester, the lowest of the low. You should be taking care of [Plaintiff]." (Id. ¶¶ 11-12.) After Defendant Haggett left, Plaintiff claims that he turned to the Hispanic arrestee, whom he identifies as "Vadim Marmer," and said, "I need you to be a witness to what just happened. I'm going to file charges against that guy." (Id. ¶ 13.) Plaintiff states that Inmate Marmer said "ok" and gave his cell phone number to Plaintiff. (Id. ¶ 14.)

Inmate Marmer corroborates Plaintiff's account of Defendant Haggett's use of force on Plaintiff while in the holding cell. Inmate Marmer states that while he was detained at the Southern Station, he saw Sergeant Haggett "walk up to [Plaintiff] and step on his foot without provocation." (Marmer Decl. at 2.) Inmate Marmer further states that: (1) Haggett struck Plaintiff with a closed fist in the head without provocation; (2) Haggett struck Plaintiff with a closed fist a second time; and (3) Haggett struck Plaintiff for the third time with a closed fist in the nose. (Id.)

Plaintiff was later taken to the county jail. (Pl.'s Decl. ¶ 15.) During the medical intake screening, Plaintiff asked the Jail Health Services worker named "Chris" whether he saw "anything

7

wrong with [Plaintiff's] face." (Id.) Plaintiff claims that Chris said he saw a "bump." (Id.) Plaintiff asked Chris to document the injury and reported to Chris that he "received the injury at the hands of Defendant Haggett."[3] (Id.)

### 2. **Defendant Haggett's Version**

Defendant Haggett maintains that he did not bend Plaintiff's finger in an awkward position or cause Plaintiff pain while taking his fingerprint. (Haggett Decl. ¶ 8.) Defendant Haggett further asserts that his only interaction with Plaintiff was while he was at the PID machine, and that he did not use force of any kind at any point during his interaction with Plaintiff. (Id. ¶¶ 10-11.)

The declarations of Officers Lee and Sherry support Defendant Haggett's assertion that he did not use force against Plaintiff. Officer Sherry states that, "[he] did not see [Defendant Haggett] interact with [Plaintiff] other than while [Defendant Haggett] was at the PID machine." (Sherry Decl. ¶ 9.) Officer Sherry also declares, "[he did] not believe that [Defendant Haggett] ever came close to the holding cell where [Plaintiff] was handcuffed." (Id.) Similarly, Officer Lee declares that he did not see Defendant Haggett around Plaintiff at any time other than when he was using the PID machine to identify Plaintiff. (Lee Decl. ¶ 9.) Officer Lee also did not see Defendant Haggett use any type of force on Plaintiff. (Id. ¶ 7.) After Plaintiff was booked and processed, Officers Sherry and Lee walked with Plaintiff to the county jail. (Sherry Decl. ¶ 10; Lee Decl. ¶ 10.) The two officers state that Plaintiff did not complain of injuries or problems at any time after his fingerprint was taken. (Sherry Decl. ¶ 11; Lee Decl. ¶ 10.)

### D. **Applicable Law**

The Fourth Amendment reasonableness standard applies to allegations of the use of excessive force raised by an arrestee detained in custody post-arrest but pre-arraignment. See Pierce, 76 F.3d at 1043; cf. Graham v. Connor, 490 U.S. 386, 395 n.10. (1989) (post-arraignment pretrial detainee protected from use of excessive force by Due Process Clause of Fourteenth Amendment).

Determining whether the force used is reasonable requires a careful balancing of the nature

---

[3] Plaintiff has not submitted any medical records in support of his opposition.

and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Graham, 490 U.S. at 396. The force applied must be balanced against the need for that force. Compare Gregory v. County of Maui, 523 F.3d 1103, 1107 (9th Cir. 2008) (despite trespasser's death, no excessive force where officers physically confronted trespasser in an attempt to disarm him, only after he repeatedly and expressly refused to comply with orders to drop pen being used as weapon and where officers never struck trespasser nor used or drew their weapons) with Drummond v. City of Anaheim, 343 F.3d 1052, 1058-60 (9th Cir. 2003) (although some force was justified in restraining mentally ill individual so he could not injure himself or officers, once handcuffed on the ground and not resisting, two officers who knelt on him and pressed their weight against his torso and neck, despite his pleas for air, used constitutionally excessive force). Because the reasonableness test is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396.[4] These factors are not exclusive, however, and the totality of the particular circumstances of each case must be considered. See Fikes v. Cleghorn, 47 F.3d 1011, 1014 (9th Cir. 1995) (jury instruction complies with Graham by focusing on totality of circumstances); see also Brewer v. City of Napa, 210 F.3d 1093, 1097 (9th Cir. 2000) (jury need not be instructed to specifically consider "alternative courses of action" available to defendant police officers).

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation, and without the "20/20

---

[4] See, e.g., Miller v. Clark County, 340 F.3d 959, 963-68 (9th Cir. 2003) (use of trained police dog to "bite and hold" suspect until officers arrived on the scene less than a minute later does not constitute unreasonable or excessive force under Fourth Amendment when suspect poses immediate threat to officers' safety, several attempts to arrest suspect with less forceful means are unsuccessful as a result of suspect's defiance, and use of police dog is well-suited to task of safely arresting suspect).

vision of hindsight." Graham, 490 U.S. at 396-97.  Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. See Forrester v. City of San Diego, 25 F.3d 804, 806 n.2 (9th Cir. 1994), cert. denied, 513 U.S. 1152 (1995) (use of minimal and controlled force in manner designed to limit injuries was reasonable); see also Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994) (requiring officers to find and choose least intrusive alternative would require them to exercise superhuman judgment), cert. denied, 515 U.S. 1159 (1995).

Furthermore, a plaintiff may prove excessive force even where there is no significant injury. See Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000) ("Headwaters I") (whether use of force poses a risk of permanent or significant injury is a factor considered in evaluating the need for the force used in a particular case, but it is certainly not dispositive), judgment vacated on other grounds, 534 U.S. 801 (2001); cf. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) (injury claim cannot survive summary judgment where plaintiff provides no medical records to support claim that she was injured as a result of being handcuffed).

Unreasonable force claims are generally questions of fact for a jury.  See Headwaters I, 240 F.3d at 1198; Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995) (citing Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991), cert. denied, 506 U.S. 1206 (1992)).  Although excessive force cases can be decided as a matter of law, they rarely are because the Fourth Amendment test for reasonableness is inherently fact-specific.  See Headwaters I, 240 F.3d at 1198.  However, a defendant can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the defendant's use of force was objectively reasonable under the circumstances. See Gregory, 523 F.3d at 1108; Scott, 39 F.3d at 915.  The issue becomes one of defining an objectively reasonable range of conduct.  See, e.g., Saman v. Robbins, 173 F.3d 1150, 1155-57 (9th Cir. 1999) (finding officer's split-second judgment to administer a single kick to subdue plaintiff in tense, uncertain and dangerous situation in which one officer had already been shot, objectively reasonable as a matter of law); Forrester, 25 F.3d at 807 (finding the use of pain compliance

1 techniques on non-resisting abortion protesters that resulted in bruises, a pinched nerve and a broken
2 wrist was objectively reasonable).

3       A defendant is entitled to summary judgment on a claim of excessive force where there is no
4 genuine issue for trial because the record taken as a whole would not lead a rational trier of fact to
5 find for the plaintiff. See Henderson v. City of Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002)
6 (summary judgment in favor of defendant proper where evidence in the record in support of
7 plaintiff's excessive force claim was "woefully sparse"); see also Arpin, 261 F.3d at 922 (plaintiff's
8 statement that she "did not resist arrest in any way" is conclusory allegation that is insufficient to
9 defeat defendant's motion for summary judgment).

10     **E.**    **Analysis**

11       The Court must accept Plaintiff's factual allegations as true for purposes of summary
12 judgment. As evident in the "Factual Background" section above, the parties' versions of the
13 incident differ markedly.

14       Accepting Plaintiff's version of the incident as true, the Court finds that the force used by
15 Defendant Haggett against Plaintiff at the PID machine was not excessive. First, Plaintiff himself
16 admitted giving a false name to Officers Lee and Sherry. (Opp'n at 5.) Because Plaintiff gave a
17 false name, Defendant Haggett had reasonable cause to suspect that Plaintiff was a criminal offender
18 who poses a risk to the safety of officers in the station. See Graham, 490 U.S. at 396. After using
19 the PID machine to identify Plaintiff, Defendant Haggett allegedly asked him whether he was a
20 parolee at large. (Pl.'s Decl. ¶ 2.) When Plaintiff remained silent, Defendant Haggett allegedly bent
21 his finger in an awkward and painful manner "to get [him] to answer." (Id. ¶ 3.) Taking the facts in
22 the light most favorable to Plaintiff, Defendant's action of bending Plaintiff's finger was nonetheless
23 reasonable given the need to ascertain Plaintiff's identity, Plaintiff's failure to cooperate, and
24 Defendant's belief that Plaintiff posed an immediate threat to the officers' safety, which was
25 reasonable in light of Plaintiff's failure to cooperate with the officers. See Graham, 490 U.S. at 396;
26 Forrester, 25 F.3d at 807. Accordingly, the Court finds that the force Defendant Haggett used while
27 at the PID machine was objectively reasonable under the totality of the circumstances.
28

11

However, viewing the evidence in the light most favorable to Plaintiff, the Court finds that a genuine issue of material fact remains with regard to Defendant Haggett's actions while in the holding cell, because the evidence produced by Defendant Haggett conflicts with Plaintiff's evidence. In his verified complaint and opposition, Plaintiff alleges that Defendant Haggett walked up to him, stepped on his right foot, asked him a question, and when Plaintiff remained silent, struck him in the head with a closed fist. (Pl.'s Decl. ¶¶ 6-7.) Plaintiff also alleges that Defendant Haggett punched him two more times, once in the forehead and another time in the nose. (Id. ¶¶ 8-9.) Plaintiff's version of Defendant Haggett's unprovoked use of force while Plaintiff was merely remaining silent supports a conclusion that the force used by Defendant Haggett was excessive. Meanwhile, if believed, Defendant Haggett's statements and supporting declarations by the other officers support a conclusion that no force was used against Plaintiff at that time. (Haggett Decl. ¶¶ 10-11; Sherry Decl. ¶ 9; Lee Decl. ¶ 9.) The Court could not grant judgment in Defendant Haggett's favor without accepting his version and disbelieving Plaintiff's version of the events that transpired. Summary judgment is not the place for credibility determinations. See T.W. Elec. Serv., 809 F.2d at 630. A trier of fact must hear both versions and decide whom to believe. Plaintiff has thus established a "genuine issue for trial" concerning the excessive force used on him while in the holding cell. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Defendant Haggett's maintains that "the only evidence of any use of force is Plaintiff's own self-serving testimony." (Reply at 3.) However, the record shows that Plaintiff has submitted a declaration from Inmate Marmer which corroborates Defendant Haggett's use of force against Plaintiff in the holding cell and was signed under penalty of perjury. (Marmer Decl. at 2.) Therefore, Defendant Haggett's claim is without merit as Plaintiff has adequately supported his allegations.

Plaintiff reports injuries to his "nose, forehead, and face" that were allegedly sustained from Defendant's excessive use of force. (Opp'n at 13.) Defendant Haggett argues that "Plaintiff's

12

contentions as to the injuries he sustained are contradicted by the objective medical evidence."[5] (Reply at 3.) Even if Plaintiff suffered no injuries, however, the absence of significant injuries is not enough to dispose of an excessive force claim. See Headwaters I, 240 F.3d at 1199. Plaintiff's failure to provide medical records to support his claim of injuries is not fatal to his case because he has set forth specific facts disputing Defendant Haggett's version of events and has submitted the declaration of an inmate who witnessed the event. Cf. Arpin, 261 F.3d at 922 (finding that conclusory allegations of injury without medical records or other evidence of injury is insufficient to withstand summary judgment on an excessive force claim).

Therefore, the Court concludes that Plaintiff has set forth specific facts showing that there is a genuine issue for trial, and thus, Defendant is not entitled to summary judgment as a matter of law. Celotex, 477 U.S. at 324. Accordingly, Defendant's motion for summary judgment is DENIED.

## II.     **Motion for Reconsideration of Dismissal of Supervisory Liability**

Plaintiff moves to reconsider the dismissal of his supervisory liability claim against Defendant Fong on the ground that she had "prior knowledge" of Defendant Haggett's "job practice of excessive force." (Mot. for Recons. at 1-2.)

Where a district court's ruling has not resulted in a final judgment or order, reconsideration of the ruling may be sought under Rule 54(b) of the Federal Rules of Civil Procedure, which provides that any order which does not terminate the action is subject to revision at any time before the entry of judgment. See Fed. R. Civ. P. 54(b). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." School Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

Under Civil Local Rule 7-9(a), no motion for reconsideration may be brought without leave

---

[5] The medical intake screening report submitted under seal by Defendant Haggett indicates that Plaintiff reported trauma to his nose; however, Defendant Haggett claims that no physical trauma, bruising, abrasions or deformity were noted in the report. (Higgins Decl., Ex. A (filed under seal).) As mentioned above, this report was not properly authenticated and will not be considered by the Court. The Court notes that if it were to consider the unauthenticated medical report, a genuine issue of material fact would still exist because the report corroborates Plaintiff's allegation that the person who conducted the medical intake screening saw a "bump" on Plaintiff's nose. (Id. at 4.)

13

of court. The moving party must specifically show: (1) that at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which the reconsideration is sought, and that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) the emergence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the court to consider material facts which were presented to the court before such interlocutory order. Civil L.R. 7-9(b). Unless otherwise ordered by the Court, no response need be filed to a motion under the Local Rule. Civil L.R. 7-9(c).

Plaintiff alleges that Defendant Fong could be held liable for Defendant Haggett's use of excessive force because she knew that Defendant Haggett had used excessive force in the past and had been subjected to disciplinary measures for these past actions. (Mot. for Recons. at 2-3.) Plaintiff also alleges that Defendant Fong's decision to allow Defendant Haggett to continue to interact with the public despite her knowledge of his demonstrated practice of excessive force amounts to deliberate indifference. (Id. at 3.)

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." Redman, 942 F.2d at 1447 (internal quotation marks and citations omitted).

The Court finds that nothing in Plaintiff's motion for reconsideration, amended complaint, or supporting exhibits is sufficient to overcome the deficiency of his supervisory liability claim against Defendant Fong. Plaintiff has not alleged that Defendant Fong was personally involved in what

transpired between Plaintiff and Defendant Haggett at the holding cell. Moreover, Plaintiff fails to allege sufficient facts to support a causal connection between Defendant Fong's knowledge of Defendant Haggett's prior alleged use of excessive force and his alleged use of force against Plaintiff on March 3, 2007. Plaintiff has not alleged that Defendant Fong sanctions the use of excessive force on arrestees. Absent Defendant Fong's direct and personal involvement, Plaintiff must show that Defendant Fong knew of the alleged violation against Plaintiff and failed to act to prevent it. See Taylor, 880 F.2d at 1045. Plaintiff contends that Defendant Haggett's past conduct involving excessive force which has resulted in disciplinary actions should have alerted Defendant Fong to Defendant Haggett's propensity for using excessive force. (Mot. for Recons. at 2-3.) Plaintiff, however, has not shown that Defendant Fong failed to act in response to Defendant Haggett's alleged propensity for violence. According to the article submitted by Plaintiff, Defendant Haggett has been subjected to disciplinary actions by the police commission for his past unreasonable behavior. (Pl.'s Ex. D.) Plaintiff does not allege that Defendant Fong has failed to administer the disciplinary measures meted out to Defendant Haggett. The article further states that Defendant Fong stated that she expects "officers who have been disciplined and are no longer suspended [i.e., Defendant Haggett] . . . 'to abide by the rules and procedures of the department.'" (Id.) It is unreasonable to expect that Defendant Fong should have done anything more, short of termination, to prevent Defendant Haggett from using excessive force against Plaintiff. It is also unreasonable to expect Defendant Fong to terminate Defendant Haggett in light of the police commission's independent assessment that his past use of excessive force warranted only suspension and counseling. (Id.) Accordingly, the Court DENIES Plaintiff's motion for reconsideration of the dismissal of the supervisory liability claim against Defendant Fong (docket no. 29).

### III.  **Motion for Appointment of Counsel**

Plaintiff also requests appointment of counsel on the grounds that he is indigent, has a limited knowledge of the law, and has repeatedly yet unsuccessfully attempted to obtain counsel. (Mot. for Att'y at 2.)

There is no constitutional right to counsel in a civil case unless an indigent litigant may lose

his physical liberty if he loses the litigation. See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 25 (1981); Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (no constitutional right to counsel in § 1983 action), withdrawn in part on other grounds on reh'g en banc, 154 F.3d 952 (9th Cir. 1998) (en banc). However, a court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).[6]

The decision to request counsel to represent an indigent litigant under § 1915 is within "the sound discretion of the trial court and is granted only in exceptional circumstances." Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984). A finding of the "exceptional circumstances" of the plaintiff seeking assistance requires an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues involved. See Agyeman v. Corr. Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004); Rand, 113 F.3d at 1525; Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Both of these factors must be viewed together before reaching a decision on a request for counsel under § 1915. See id. Neither the need for discovery, nor the fact that the pro se litigant would be better served with the assistance of counsel, necessarily qualify the issues involved as complex. See Rand, 113 F.3d at 1525 (where plaintiff's pursuit of discovery was comprehensive and focused, and his papers were generally articulate and organized, district court did not abuse discretion in denying request for counsel); Wilborn, 789 F.2d at 1331 (finding that plaintiff may well have fared better with assistance of counsel not enough).

There are no exceptional circumstances which would warrant the appointment of counsel at this time. See Franklin, 745 F.2d at 1236. Plaintiff has been able to articulate his claims adequately pro se. See Agyeman, 390 F.3d at 1103. Further, it would be in the best interests of the parties and judicial efficiency to first engage in court-ordered settlement proceedings. Accordingly, Plaintiff's request for appointment of counsel (docket no. 53) is DENIED at this time. This denial is without

---

[6] The Supreme Court has made clear that Section 1915 does not give courts the power to make "coercive appointments of counsel." Mallard v. United States District Court, 490 U.S. 296, 310 (1989). But it has declined to address the question of whether a court has the "inherent power" to require lawyers to serve. See id.

16

prejudice to reconsideration should the Court on its own motion find that the appointment of counsel is necessary in the event that settlement is unsuccessful. If the Court decides that appointment of counsel is warranted at that time, then it can seek volunteer counsel to agree to represent Plaintiff pro bono.

**CONCLUSION**

For the foregoing reasons:

1. Defendant Haggett's motion for summary judgment (docket no. 48) is DENIED.

2. Unless this case can be settled it will have to be tried.

3. The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a neutral magistrate judge for settlement proceedings. The proceedings will consist of one or more conferences as determined by Magistrate Judge Nandor Vadas. The conferences shall be conducted at a location to be determined by Magistrate Judge Vadas with Plaintiff as well as Defendant Haggett and/or his representative attending.

The Court finds that a referral is in order now that Plaintiff's excessive force claim has survived summary judgment. Thus, this case is REFERRED to Magistrate Judge Vadas for a settlement conference. The conference shall take place within sixty (60) days of the date of this Order, or as soon thereafter as is convenient to the magistrate judge's calendar. Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the Court a report regarding the conference.

The Clerk of the Court shall provide a copy of this Order, and copies of documents from the court file that are not accessible electronically, to Magistrate Judge Vadas.

4. Plaintiff's Motion for Reconsideration of Dismissal of Plaintiff's Supervisory Liability Claim (docket no. 29) is DENIED.

5. Plaintiff's Motion for Appointment of Counsel (docket no. 53) is DENIED.

6. Plaintiff's Motion to Request Leave for Discovery (docket no. 42) is GRANTED. Discovery may be taken in accordance with the Federal Rule of Civil Procedure 30 (a)(2). All

discovery requests must be served on the opposing party on or by **May 20, 2009** and all discovery responses must be served on or by **July 20, 2009**.

      7.      Given that Plaintiff is no longer incarcerated, his motion for telephonic or video communications with the Court (docket no. 46) is DENIED as moot.

      8.      The Clerk of the Court shall send a copy of this Order to Plaintiff.

      9.      This Order terminates Dockets nos. 29, 42, 46, 48 and 53.

IT IS SO ORDERED.

DATED: 3/13/09

                                                                             *Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

<div style="text-align: right"><!-- --></div>

|   |   |
|---|---|
| 1  BROOKS WALTER, | Case Number: CV07-02615 SBA |
| 2           Plaintiff, | **CERTIFICATE OF SERVICE** |
| 3  v. |   |
| 4  SAN FRANCISCO POLICE CHIEF et al, |   |
| 5           Defendant. |   |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 16, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Walter Brooks
P.O. Box 30012
Oakland, CA 94607

Dated: March 16, 2009

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.07\Brooks2615.denyMSJ.wpd       19

**United States District Court**
For the Northern District of California